IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CASSANDRA L. JOHNSON, as Next Friend of Jeremy O. Johnson, Deceased, §§§§§ Plaintiff, §§§ V. §§§ CAROLYN W. COLVIN, §§§ Acting Commissioner of Social Security, §§§ Defendant. § | No. 3:12-cv-1947-BN |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Cassandra Johnson ("Plaintiff"), appearing as next friend of Jeremy O. Johnson ("Johnson"), seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

## **Background**

Plaintiff alleges that Johnson was disabled due to a variety of ailments, including diabetes mellitus, hypertension, neuropathy, and gastroparesis. *See* Dkt. No. 18 at 4-5. After Johnson's applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Johnson requested a hearing before an administrative law judge. That hearing was held on April 2, 2010. *See* Administrative Record ("Tr.") [Dkt. No. 13] at 42. At the time of the hearing, Johnson was 20 years old. *See id.* at 46. He was a high school graduate and attended college for two years. *See id.* Johnson had past relevant work experience as a cashier

and cook at a fast food establishment, a stock clerk and bagger for a grocery store, and a warehouse worker. *See id.* Johnson had not engaged in substantial gainful activity since August 10, 2008. *See id.* at 19.

The ALJ found that Johnson was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Johnson suffered from diabetes mellitus and hypertension, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 19-20. The ALJ further determined that Johnson had the residual functional capacity to perform the full range of unskilled sedentary work, but could not return to his past relevant employment. *See id.* at 29. Relying on a vocational expert's testimony, the ALJ found that Johnson was capable of working as a lens inspector, film inspector, basic telephone clerk, and order clerk – jobs that exist in significant numbers in the national economy. *See id.* Given his age, education, and residual functional capacity, the ALJ determined that Johnson was not disabled under the Medical-Vocational Guidelines. *See id.*

Johnson appealed that decision to the Appeals Council. After his hearing, Johnson passed away. *See id.* at 37. Plaintiff substituted herself as the party upon Johnson's death. *See id.* at 38. Plaintiff submitted additional arguments to the Appeals Council. *See id.* at 10-13. The Council affirmed the ALJ's decision. *See id.* at 1.

Plaintiff then filed this action in federal district court. In a single ground for relief, Plaintiff contends that the ALJ committed reversible error because the hearing decision is not supported by substantial evidence. *See* Dkt. No. 18 at 1. More

particularly, Plaintiff argues that: (1) the ALJ did not consider all of the impairments affecting Johnson in determining his residual functional capacity ("RFC"); (2) the ALJ did not give appropriate weight to the medical opinion evidence of record; and (3) the finding that Johnson could perform other work in the national economy was based on an improper hypothetical question to the vocational expert. *See id.* at 1-2.

The Court determines that the hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

    In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff generally contends that the ALJ's decision is not supported by substantial evidence. Plaintiff raises the following three specific claims to support her argument: (1) the ALJ did not consider all of the impairments affecting Johnson in determining Johnson's RFC; (2) the ALJ did not give appropriate weight to the medical opinion evidence of record; and (3) the finding that Johnson could perform other work in the national economy was based on an improper hypothetical question to the vocational expert. *See* Dkt. No. 18 at 1-2. All of these issues have the same foundation: the ALJ failed to properly consider Johnson's gastroparesis, and thus, the ALJ's

Decision is not supported by substantial evidence. Finding that one argument – that the ALJ improperly gave greater weight to the opinion of the State Agency's expert medical and other expert personnel – warrants reversal, the Court will begin and end its analysis there.

Plaintiff argues that the ALJ improperly gave "greater weight" to the opinions of the State Agency physicians than to the opinion of treating physicians. *See id.* at 6. Specifically, Plaintiff contends that the State Agency doctors did not know about Johnson's worsening condition and gastroparesis because they evaluated him before his gastroparesis presented and did not review the later records concerning it. Thus, according to Plaintiff, the State Agency assessments were performed without several parts of the medical record, including the numerous evaluations, hospitalizations, and diagnostic tests that occurred after the State Agency review. *See id.* Plaintiff's position is that these records are critical to determining Plaintiff's RFC and, as such, the ALJ's relying on the incomplete State Agency physicians' assessments was error. *Id.*

Defendant responds that the ALJ reviewed the State Agency physicians' opinions as well as all of the other reviewing physicians opinions and therefore his decision to place "greater weight" on the State Agency assessment was not improper. *See* Dkt. No. 20 at 7. Defendant, relying on 20 C.F.R. §§ 404.1528(e)(2)(i) and 416.928(e)(2)(i), further argues that the ALJ was required to consider the State Agency medical opinions because no other physician of record conducted a function-by-function assessment of Johnson's work-related abilities. *See id.* at 8.

The Court agrees that the ALJ did discuss many medical records in his decision and did state that he considered, evaluated, analyzed, and weighed all of the evidence of record. But a review of the records demonstrates that the ALJ, and the State Agency physicians, failed to consider significant medical information.

The Physical RFC Assessment was dated June 29, 2009. *See* Tr. at 541. In it, the State Agency physician concluded that Johnson could lift and/or carry 10 pounds frequently and 20 pounds occasionally, could stand and/or walk for about 6 hours out of an 8-hour work day, could sit for about 6 hours in an 8-hour work day and had no limitations in his ability to push and/or pull. *See id.* at 535. The report notes no other limitations and details some of the information gleaned from the reviewed records. *See id.* at 541. The case assessment form, which was completed on September 17, 2009 by Randal Reid, confirms the findings of the June 29, 2009 Physical RFC Assessment. *See id.* at 872.

"As a factfinder, the ALJ has the sole responsibility for weighing the evidence and choosing whichever limitations are most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ is not bound by the State Agency physician's opinions, but he may not ignore them and must explain in his decision the weight given to those opinions. *See* SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996); *id.* at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of ... examining sources."); *Helbing v. Astrue*, No. 4:11-cv-704-Y, 2012 WL 6719463, at *12 (N.D. Tex. Oct. 29, 2012); *see also Valadez v. Barnhart*, Civ. A. No. SA04CA1176XR,

2005 WL 2648329, at *9 (W.D. Tex. Oct. 11, 2005) ("For example, the opinion of a State agency medical consultant or other program physician may be entitled to greater weight than a treating source's medical opinion if the State agency medical consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."). The ALJ is authorized to give greater weight to the State Agency physicians' opinions where there is a substantial amount of evidence in the record in support of the ALJ's decision. *See Rudicel v. Astrue*, 282 F. App'x 448, 452 (7th Cir. 2008). Put another way, "an ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990).

Here, the ALJ gave "greater weight" to the opinion of the State Agency's physicians and other personnel based on the ALJ's review of the medical history and evidence. *See* Tr. at 28. The ALJ found that these opinions were consistent with, and supported by, the preponderance of medical and other evidence in the record. *See id.*

But Plaintiff argues that the State Agency physicians did not have evidence related to Johnson's subsequent diagnosis of, and hospitalization for, gastroparesis. *See* Dkt. No. 21 at 5. Johnson was diagnosed with diabetes at age 13. *See* Tr. at 48. Prior to the State Agency assessment in 2009, Johnson was hospitalized many times, most often for diabetes-related issues with his feet and toe ulcerations. *See, e.g., id.* at 362-

370, 403, 413, 726. In the assessment, the State Agency physician notes this history of diabetes, neuropathy, and toe ulceration and concludes that the evidence of record only partially supports Johnson's allegations. *See id.* at 541. Because Johnson's gastroparesis had not yet presented, or been diagnosed, there is no mention of it or its effects in the State Agency assessments. *See id.* at 541, 872.

Defendant argues that this is not error because the ALJ did not rely exclusively on the reviewing physicians' opinions. *See* Dkt. No. 20 at 7. And the ALJ did discuss the events that occurred both before and after the State Agency assessments and summarized some of the records regarding Johnson's gastroparesis. *See* Tr. at 22-24.

But, while the ALJ reviewed medical records that were not reviewed by the State Agency physician, including records from late 2009 and 2010, the ALJ failed to acknowledge, or account for, some of the more disturbing parts of those medical records. *See id.* at 23-24.

For instance, the ALJ's decision makes no mention of Johnson's treating physician statement in March 2010 that Johnson had "significant" gastroparesis, which "has caused multiple hospitalizations and potentially [would cause] more," *see id.* at 1033, or of the hospital notes from April 2010, which state that the nausea and vomiting is a "chronic issue for [Johnson] and he will require long term care," *see id.* at 1207. Moreover, the ALJ's primary discussion of the March 2010 treating physician statement amounts to the ALJ's saying that this statement did not provide any limitations for claimant or any indication as to "what extent claimant's impairments affect his ability to conduct activities of daily living." *Id.* at 23. However, that record

clearly states that Johnson has significant gastoparesis that had caused multiple hospitalizations, and would likely cause more hospitalizations, and that Johnson had severe neuropathy that made walking difficult. *See id.* at 1033. Other records indicate that Johnson was vomiting three to four times a day for two weeks at a time in March 2010. *See id.* at 1039. While the ALJ referenced some of these medical records, the ALJ at no point mentioned the limitations noted above. *See id.* at 23-24.

Further, as explained above, the State Agency physician did not review these records or have knowledge of the gastroparesis because its onset occurred after their assessments. Therefore, the Court concludes that there was not a substantial amount of evidence in the record in support of the ALJ's decision to give greater weight to the State Agency physicians' opinions, which were not based upon a careful evaluation of all of the relevant medical evidence. *See Rudicel*, 282 F. App'x at 452; *Villa*, 895 F.2d at 1024.

Moreover, in essence, Plaintiff is attacking the ALJ's decision to give less weight to Johnson's treating physician. "The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good

cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Social Security Administration ("SSA") Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors that an ALJ must consider to assess the weight to be given to a treating physician's opinion when the ALJ determines that the opinion is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*See id.* § 404.1527(c).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to

cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(d) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

This is not a situation in which the ALJ has rejected the sole medical opinion before it. Rather, the ALJ decided to give controlling, or at least greater, weight to the opinion of the State Agency physician. *See* Tr. at 24. As such, to the extent that Plaintiff argues the ALJ did not properly consider each of the Section 404.1527(d) factors, that argument must fail.

That said, the instant case is also not a situation in which the ALJ demonstrated good cause existed to reject a treating source opinion. And the ALJ was not permitted to "pick and choose" the only evidence that supported his position. *See Loza v. Apfel*, 219 F.3d 378, 393-94 (5th Cir. 2000) ("Finally, it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."). By failing to acknowledge or discuss the treating physicians' opinions as to Johnson's gastroparesis, that is what the ALJ did. The ALJ provided no evidence of, or discussion related to, whether the treating physician's evidence is "conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. In fact, the ALJ does not state that there is any evidence that conflicts with the treating source statement regarding Johnson's gastroparesis, but rather the ALJ's decision merely

states that he is giving the State Agency physicians' opinions greater weight because their documents "established that the evidence of the claimant's treating sources was given its due weight when considered along with the evaluation of consultative physicians." Tr. at 28.

But, as noted above, the State Agency assessments provide no discussion of the gastroparesis or the impact that it had on Johnson or his ability to work. Subsequent medical records indicate that gastroparesis was significant, caused Johnson to be hospitalized many times, and might be the cause for subsequent hospitalizations and long term care. *See id.* at 1033.

For these reasons, the ALJ erred by placing greater weight on the State Agency physicians' opinions, which did not consider Johnson's subsequent health conditions, and by failing to acknowledge the effect that Johnson's gastroparesis had on his ability to work. The ALJ further erred by choosing to discuss only those parts of Johnson's gastroparesis diagnosis that did not undermine his conclusion and ignore those parts of the record that contradicted his conclusion. *See Loza*, 219 F.3d at 393-94.

Reversal is only warranted, however, if Plaintiff shows that she was prejudiced by the ALJ's error. Prejudice is established when the claimant demonstrates that she would have adduced evidence that might have changed the result. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Plaintiff has demonstrated prejudice by pointing to evidence that the ALJ could have considered that might have changed the result – specifically, the medical records regarding the long term effects of gastroparesis. As such, reversal and remand for further proceedings is required.

**Conclusion**

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. Plaintiff's Motion for Summary Judgment [Dkt. No. 18] is GRANTED, and Defendant's Cross Motion for Summary Judgment [Dkt. No. 20] is DENIED.

DATED: September 26, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE